# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1775

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Laura J. Adler, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 21, 2009
Filed: December 31, 2009

_____

Before RILEY, HANSEN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This case arises out of a traffic stop near a ruse checkpoint that led to a search of Laura Adler's truck and the seizure of 470 pounds of marijuana. The district court granted Adler's motion to suppress the evidence from the search, holding that the trooper who conducted the traffic stop did not have probable cause to believe that Adler committed a traffic violation. We reverse.

## I.     BACKGROUND

On April 23, 2008, the Nebraska State Patrol set up a ruse narcotics checkpoint on a stretch of Interstate 80 in Nebraska.  The troopers posted signs indicating that drug dogs were in use at a vehicle checkpoint a few miles ahead on the interstate.  The advertised checkpoint did not exist.  *Cf. City of Indianapolis v. Edmond*, 531 U.S. 32, 41-42 (2000) (holding that an actual narcotics checkpoint violated the Fourth Amendment).  The signs were placed a short distance before an exit with no advertised services or rest areas.  Trooper Cory Townsend waited at the end of the exit ramp and watched the vehicles that exited.

Trooper Townsend observed Adler exit, come to the stop sign at the end of the exit ramp, stop for approximately three seconds, signal a left turn, and then turn left.  Believing he had observed a traffic violation, since Adler failed to signal her turn before she reached the intersection, Trooper Townsend executed a traffic stop.  After speaking with Adler, who declined to consent to a search of her vehicle, Trooper Townsend requested that another trooper with a drug detection dog circle the truck.  After the dog indicated that it had detected the odor of narcotics, Trooper Townsend searched the truck and found approximately 470 pounds of marijuana in the cargo bed.

A grand jury indicted Adler on one count of possessing with intent to distribute 100 kilograms or more of marijuana, a violation of 21 U.S.C. § 841.  Adler pled not guilty and filed a motion to suppress the marijuana, arguing among other things, that Trooper Townsend did not have probable cause to stop her because she did not in fact commit a traffic violation.  The Government argued that Adler violated Section 60-6,161(2) of the Nebraska Revised Statutes, which provides:

> A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

The district court held that the statute's plain language dictates that some turns do not require a turn signal 100 feet in advance because Section 60-6,161(2) only demands such turn signals "when required." *See Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("[W]e must give effect to every word of a statute wherever possible . . . ."). However, the statute is silent on which turns might be exempt from the requirement of signaling 100 feet in advance. During the suppression hearing, Adler introduced the Nebraska Driver's Manual, issued by the Nebraska Department of Motor Vehicles. The district court concluded that the manual's instructions indicated that the "when required" language restricted the statute only to require a signal 100 feet in advance for turns where the vehicle did not come to a full stop first. Under this reading, turns following a full stop, such as Adler's, do not need to be signaled 100 feet in advance.

Since Adler came to a full stop before turning, the district court held that Trooper Townsend was incorrect in believing Adler committed a traffic violation in failing to signal her turn 100 feet in advance. Additionally, the district court held that Trooper Townsend's belief that Adler had violated Nebraska law was not objectively reasonable. *See United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) ("In our circuit, if an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an 'objectively reasonable one.'" (quoting *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005))). Therefore, the district court granted Adler's motion to suppress. The Government appeals.

## II.   DISCUSSION

In reviewing a district court's ruling on a motion to suppress, we review its factual findings for clear error and its legal conclusions de novo. *United States v. Ellis*, 501 F.3d 958, 961 (8th Cir. 2007). Whether probable cause existed is a legal question reviewed de novo. *United States v. Valle Cruz*, 452 F.3d 698, 702 (8th Cir. 2006). "[T]he decision to stop an automobile is reasonable where the police have

probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008) (quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc)). The Government bears the burden of establishing that probable cause existed. *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006).

The parties offer competing interpretations of Section 60-6,161(2). Adler argues, along the lines of the district court's opinion, that the "when required" language renders the statute inapplicable to turns made after the vehicle comes to a complete stop. The Government counters that the "when required" language is simply a reference back to the statute itself, since Section 60-6,161 is the only part of the Nebraska traffic code discussing the use of a turn signal.[1] Under the Government's interpretation, Section 60-6,161 requires drivers to signal 100 feet in advance of *any* turn, regardless of whether the vehicle will come to a complete stop before turning.

We agree with the Government's reading of Section 60-6,161(2). "[W]hen a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Harris v. United States*, 536 U.S. 545, 555 (2002) (internal quotations omitted). In this case, we believe Adler's proposed reading of the statute would raise serious concerns about whether the statute is void for vagueness. *See City of Chicago v. Morales*, 527 U.S. 41, 46 (1999) ("It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." (quoting *Giacco v. Pennsylvania*, 382 U.S. 399, 402-03 (1966))). Adler would have us read the "when required" language to exempt a class of turns from the statute's

---

[1]Although Sections 60-6,162 and 60-6,163 describe the proper method of signaling, there are no Nebraska statutes other than Section 60-6,161 that describe when a signal is required.

reach. However, neither the traffic code nor any of the normal tools of statutory interpretation provide guidance about which turns in particular would be exempted.[2] Where a statute contains an exception for an unspecified class of conduct, serious questions would arise about whether the public has fair notice of the conduct prohibited and permitted. *See, e.g.*, *James v. United States*, 550 U.S. 192, 229-30 (2007) (Scalia, J., dissenting). This is precisely how Adler would have us read the statute, however, and the canon of constitutional avoidance directs us to avoid this approach. Therefore, we adopt the alternative reading the Government proposes: Section 60-6,161 requires a turn signal be given 100 feet before any turn. The "when required" language simply refers back to the description within the statute of when such a signal is required, namely 100 feet before a turn.

The Nebraska Supreme Court has suggested that it favors the Government's reading of the statute, and "state courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). In *Huntwork v. Voss*, 525 N.W.2d 632 (Neb. 1995), the court stated, without noting any exceptions, that a "left-turning motorist has the duty to continually signal his intention to turn left during not less than the last 100 feet before turning," *id.* at 635. While *Huntwork* involved a moving vehicle rather than a turn after a complete stop, the Nebraska Supreme Court did not discuss that fact in concluding that the driver in *Huntwork* complied with Section 60-

---

[2]The Nebraska Driver's Manual explicitly states: "The information herein is not intended to be an official legal reference to Nebraska traffic laws. If you have a court case or other reason to know the actual language of law, it will be necessary for you to refer to the actual statutes rather than this manual." As a result, the manual does not provide insight into the meaning of Section 60-6,161. As noted, there are no other statutes which would provide guidance as to the meaning of "when required," and neither party cites any additional resources we might use in defining Adler's proposed exception. Adler's reading would thus leave us at a loss to select among the multitude of possible exceptions noted at oral argument: turns following a stop, turns to avoid a sudden danger, emergency vehicle turns, etc.

6,161. *Id.* at 636. Even if dicta, the Nebraska Supreme Court's categorical statement nonetheless supports our reading of Section 60-6,161(2).

Although Adler is correct that courts ought to avoid readings of statutes that render certain words surplusage, *Leocal*, 543 U.S. at 12, this is not an absolute rule of interpretation. "There is no question that the statute would be read as we read it even if the phrase were missing. But as one rule of construction among many, albeit an important one, the rule against redundancy does not necessarily have the strength to turn the tide of good cause to come out the other way." *Gutierrez v. Ada*, 528 U.S. 250, 258 (2000). In this case, we find that the rule against surplusage is not sufficient to force us into the difficult exercise of attempting to define an exempted class of turns when the Nebraska traffic code is silent on the issue. As a result, because we interpret Section 60-6,161(2) to require Adler to have signaled her turn 100 feet in advance, we hold that Trooper Townsend had probable cause to stop her vehicle for the traffic violation he observed.

## III.  CONCLUSION

For the foregoing reasons, we reverse the district court's grant of Adler's motion to suppress and remand for proceedings consistent with this opinion.

_____