*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0153p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

         *Plaintiff-Appellant,*

    *v.*

MYRON HUGHES,

         *Defendant-Appellee.*

No. 08-6008

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 07-00252-001—Thomas A. Wiseman, Jr., District Judge.

Argued: March 5, 2010

Decided and Filed: May 27, 2010

Before: CLAY and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Blanche B. Cook, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Caryll S. Alpert, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee. **ON BRIEF:** Blanche B. Cook, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Caryll S. Alpert, Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee.

     McKEAGUE, J., delivered the opinion of the court, in which POLSTER, D. J., joined. CLAY, J. (pp. 14-18), delivered a separate dissenting opinion.

_____

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**OPINION**

---

McKEAGUE, Circuit Judge.   Myron Hughes was pulled over by Nashville Metropolitan Police Officer Matthew Atnip around 11:00 p.m. on March 6, 2007, shortly after Atnip observed Hughes's car standing for approximately three minutes at or near an L-shaped intersection in a deserted, high-crime, industrial neighborhood.  Hughes, a convicted felon, admitted that he had been rolling a marijuana cigarette; a subsequent search of the vehicle produced a pistol and small amounts of marijuana, crack cocaine, and cocaine.  Hughes was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924.  On August 6, 2008, the district court granted Hughes's motion to suppress the evidence found in the car, concluding that Atnip lacked reasonable suspicion that Hughes was engaged in criminal activity and that Atnip did not in fact stop Hughes because of any alleged traffic violations.  Because the district court incorrectly focused on Atnip's subjective intent, we reverse in part and remand for consideration of whether, at the time of the stop, Atnip had probable cause to believe that Hughes had violated Nashville Municipal Ordinance 12.40.080.

**I.**

On March 6, 2007, Officer Atnip was sitting in an unmarked police vehicle on Transit Drive in Nashville, Tennessee, facing away from the L-shaped intersection of Transit Drive and Lannie Boswell Avenue.  This neighborhood is mostly industrial and, according to Atnip, at night is completely desolate and known to attract significant crime, including prostitution, burglary, and drug trafficking.  At around 11:00 p.m., while making a personal phone call, Atnip witnessed Hughes's white SUV come up Transit and then stop near or at the intersection, blocking one side of the road.  Atnip observed the car for approximately thirty seconds, and then radioed in his belief that he had a suspect casing businesses; Atnip continued to observe the vehicle for another two minutes, and then did a U-turn to pull in behind the SUV.  Approximately thirty seconds after Atnip pulled up behind the SUV, the SUV moved, turned left onto Lannie Boswell,

and then drove to Elm Hill Pike, the road at the end of Lannie Boswell. After following for at least half a mile, Atnip – who later testified that he did not act sooner because he was awaiting back-up – turned on his lights and pulled the SUV over. Atnip approached the vehicle and noticed loose marijuana on Hughes's shirt; Hughes then admitted that he had been rolling a marijuana cigarette, and that his vehicle contained both marijuana and a gun. A subsequent search of the vehicle produced a small-caliber pistol, marijuana, and small amounts of cocaine and crack-cocaine. At the time of this stop and arrest, Atnip did not issue Hughes a traffic citation.

Over time, first Atnip and then the government raised seemingly new explanations and justifications for the stop. On March 7, 2007 (the day following the stop), Atnip filed an Investigative Report, in which he declared that he had "stopped the defendant for possible theft investigation and to check his welfare (lost or intoxicated)." (Hughes Appx. at 17.) Several days later, Atnip testified at a State Preliminary Hearing, where he again stated that he had stopped Hughes both for suspicious activity and to check on Hughes's welfare. On cross-examination, Atnip added that he could have cited Hughes for "obstructing a passageway," but that he could not think of anything else for which he could have written a ticket. (Supp. Hr'g Tr. (SHT) at 108-09 (reading testimony into the record)).

Following the State Preliminary Hearing, federal prosecutors assumed control of the case, and on December 12, 2007 Hughes was indicted on the federal charge that, as a convicted felon, he was knowingly in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. Hughes then moved to suppress the evidence found in the SUV, arguing that Atnip's stop of the vehicle was illegal. The government responded by arguing that: (1) given the high-crime neighborhood, the time of night, and Hughes's odd behavior behind the wheel, Atnip had reasonable suspicion that the occupants of the SUV were engaged in criminal activity, and thus was justified in making a stop under *Terry v. Ohio*, 392 U.S. 1, 30 (1969); and (2) regardless, Atnip *could* have stopped Hughes for violating various traffic ordinances or statutes, and so the stop was justified. During the district court's Suppression Hearing – held more than a year after the stop –

the government focused almost entirely on the first of these arguments. In addition to testifying about his suspicion that Hughes was casing businesses, however, Atnip also testified that he could have stopped Hughes for violating: (1) Tennessee statute T.C.A. § 39-17-307,[1] which prohibits obstructing traffic; (2) Nashville Municipal Ordinance 12.24.060,[2] which prohibits drivers from entering intersections unless they have room to get through on the other sides; and Nashville Municipal Ordinance 12.40.080,[3] which prohibits parking in such a way as to obstruct traffic. Atnip then again stated that he had actually stopped Hughes for suspicious activity, to check Hughes's welfare, and for obstruction of a passageway.

On August 8, 2006, following the Suppression Hearing, the district court granted Hughes's motion to suppress, concluding that: (1) under the circumstances Atnip did not have reasonable suspicion of criminal activity; and (2) at the time of the stop Atnip had no *intention* of pulling Hughes over for any alleged traffic violation. Specifically, the

---

[1]According to T.C.A. § 39-17-307:

(a) A person commits an offense who, without legal privilege, intentionally, knowingly or recklessly:

> (1) Obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, or hallway to which the public, or a substantial portion of the public, has access; or any other place used for the passage of persons, vehicles or conveyances, whether the obstruction arises from the person's acts alone or from the person's acts and the acts of others . . . .

(b) For purposes of this section, 'obstruct' means to render impassable or to render passage unreasonably inconvenient or potentially injurious to persons or property.

[2]According to Nashville Municipal Ordinance 12.24.060:

**Obstructing intersections – Entry restrictions.** A. No driver shall enter an intersection or a marked crosswalk, or drive onto any railroad grade crossing, unless there is sufficient space on the other side of the intersection, crosswalk, or railroad grade crossing to accommodate the vehicle he is operating without obstructing the passage of other vehicles, pedestrians, or railroad trains.

Atnip apparently read this ordinance as a general prohibition on entering intersections and stopping. In fact, however, as the plain language demonstrates, this ordinance is *really* about forbidding cars from entering intersections (i.e. driving in the middle of the cross-streets) unless they can keep going through the intersection and get out of the way of crossing traffic. In other words, this ordinance has nothing to do with Hughes's conduct. Presumably realizing that the ordinance is not applicable, the government has abandoned this issue on appeal, and has thus waived the argument.

[3]"**Parking not to obstruct traffic.** No person shall park any vehicle upon a street in such a manner or under such conditions as to leave available less than twelve feet of the width of the roadway for free movement of vehicular traffic." Nashville Municipal Ordinance 12.40.080.

district court stated that "[a]lthough a stop may be justified by either a moving or a parking violation . . . the Court finds that such violations did not play any role in Officer Atnip's decision to stop [Hughes] in this case." (Dist. Ct. Memo. at 4.) Following the district court's ruling, the government appealed, arguing that the court improperly looked to Atnip's subjective intent at the time of the stop, rather than to the objective question of whether Atnip had the cause required to justify a traffic stop.[4] As part of this appeal, the government for the first time argued that Atnip could have stopped Hughes for violating Nashville Municipal Ordinance 12.40.040(A)(1)(c)[5], which prohibits parking in an intersection.[6]

## II.

"When reviewing the district court's decision regarding a motion to suppress, we review its factual findings for clear error and its legal conclusions de novo." *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008) (citing *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008)). As an initial matter, we find that the district court applied the wrong standard by looking to whether moving or parking violations "play[ed] any role in Officer Atnip's decision to stop" Hughes. (Dist. Ct. Memo. at 4.) The district court here was clearly looking to Atnip's subjective intent – whether Atnip *really* stopped Hughes for a moving violation or a parking violation, or instead whether Atnip stopped Hughes because Atnip suspected that Hughes was preparing to commit

---

[4]Despite having a strong argument that Hughes's behavior and the context created a reasonable suspicion that Hughes was engaged in criminal activity, and so justified a stop under *Terry v. Ohio*, 392 U.S. 1, 30 (1969), the government has chosen not to challenge the district court's ruling that Officer Atnip lacked that reasonable suspicion. "As this court has frequently observed, '[a]n appellant waives an issue when he fails to present it in his initial briefs.'" *LoCoco v. Medical Sav. Ins. Co.*, 530 F.3d 442, 451 (6th Cir. 2008) (citing *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003)).

[5]"**Stopping, standing or parking – Prohibited locations.** Except when necessary to avoid conflict with other traffic . . . no person shall . . . [s]top, stand or park a vehicle . . . [w]ithin an intersection." Nashville Municipal Ordinance 12.40.040(A)(1)(c).

[6]On appeal, the government also argued that Atnip could have stopped Hughes for violation of T.C.A. § 55-8-160(a)(14), which prohibits parking in front of no-parking signs. At the Suppression Hearing, Atnip indeed testified that the whole street was lined with no-parking signs. In his response brief, however, Hughes alleged that in March of 2007 these no-parking signs were not in place. The government first sought to strike Hughes's brief, alleging that Hughes's argument was "lacking in good faith," (Gov. Reply Br. at 25), but then, after investigating, conceded that the no-parking signs were erected some time after March of 2007. T.C.A. § 55-8-160(a)(14) is thus irrelevant.

a crime.[7]  As the Supreme Court has made clear, however, the permissibility of a traffic stop turns not on subjective intent, but rather on objective fact.  *Whren v. United States*, 517 U.S. 806, 813 (1996) ("We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. . . . Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *see also United States v. Sanford*, 476 F.3d 391, 395 (6th Cir. 2007) ("[The officer's] ulterior motivations, if any, are irrelevant.").  In other words, if, at the time of the stop, Atnip had probable cause[8] to believe that Hughes was violating one of the traffic ordinances or statutes raised by the government before the district court, then it simply does not matter whether Atnip intended to stop Hughes on the basis of that traffic violation or instead intended to stop Hughes because Atnip suspected that Hughes was preparing to commit a crime.

Saying that courts should not look to subjective intent, but should instead look to whether an officer had sufficient cause for a stop does not, however, end our inquiry – for we still need to say what it is for an officer to *have* sufficient cause.  In order for a stop based on a moving or parking violation to be permissible under the Fourth

---

[7]The dissent argues that we incorrectly "assume" that the district court was focusing on Atnip's subjective intent when the court stated that moving and traffic violations did not "play any role in Officer Atnip's decision to stop" Hughes.  The statement, the dissent argues, "rather represents an objective look at the factual context surrounding the stop to determine whether, under the totality of the circumstances, there was probable cause."  (Dissent at 15.)  The dissent's argument, however, confuses the question of whether traffic violations *did* "play a role" in Atnip's decision and the question of whether the violations *could have* "play[ed] a role" in Atnip's decision in this particular case.  The first question is about why Atnip in fact made the stop, and so is about what Atnip had in mind – in other words, his subjective intent; the second is about whether Atnip in fact had probable cause to believe that a traffic offense had occurred.  To put it another way: it is possible for there to be probable cause for a stop even where the facts that give rise to that probable cause (such as a violation of traffic laws) play no role in an officer's decision to make the stop.

[8]"There is a degree of confusion in this circuit over the legal standard governing traffic stops," and in particular over whether police officers must have reasonable suspicion or probable cause in order to make a valid stop.  *Sanford*, 476 F.3d at 394; *see also United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (holding that the reasonable suspicion standard applies to *ongoing* misdemeanors, even if the probable cause standard applies to *completed* misdemeanors); *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) ("This circuit has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation.") (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n. 6 (6th Cir. 2004)).  Here, the government raises only either civil infractions or misdemeanors that were clearly *completed* by the time Atnip actually stopped Hughes.  In other words, in order for the stop to have been proper in this case, Atnip needed to have probable cause rather than reasonable suspicion that Hughes had violated Nashville Ordinances 12.24.040 or 12.40.080 or T.C.A. § 39-17-307.

Amendment, it is not sufficient for a police officer to know the facts that give rise to probable cause or reasonable suspicion; the officer must *also*, at the time of the stop, know or reasonably believe that those facts *actually* give rise to probable cause or reasonable suspicion.  In other words, in order for traffic stop to be permissible under the Fourth Amendment, a police officer must know or reasonably believe that the driver of the car is doing something that represents a violation of law.  This is not to say that officers must be able to, at the time of a stop, cite chapter and verse – or title and section – of a particular statute or municipal code in order to render the stop permissible.  This rule might be better stated as saying that police officers may not look for after-the-fact justifications for stops that would otherwise be impermissible; following a stop, the government should not begin poring through state and local traffic ordinances looking for any that a suspect might have violated.  As we explained in *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc):

> We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. . . . We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew at the time he made the stop. Under this test, it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop. If an officer testifies at a suppression hearing that he in fact did not see the traffic violation or did not have probable cause to believe a violation had occurred, but only discovered after the stop or the arrest that the suspect had committed a traffic violation, a court could not find that probable cause existed. Such a stop would be unreasonable under the Fourth Amendment. Conversely, if the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual.

## III.

Having determined that the district court erroneously looked to Atnip's subjective intent, we next turn to the question of whether, at the time of the stop, Atnip in fact had probable cause to stop Hughes for a violation of some traffic ordinance or statute. Apart from the false claim – now conceded by the government – that Atnip had probable cause for the stop because Hughes violated T.C.A. § 55-8-160(a)(14) by parking in front of a no-parking sign, and the untenable claim – now abandoned by the government – that Atnip had probable cause to believe that Hughes violated Nashville Municipal Ordinance 12.24.060 by entering an intersection without having room on the other side to get through, the government asserts that Atnip had probable cause to believe that Hughes had violated Nashville Municipal Ordinance 12.40.040 (prohibiting parking in an intersection), T.C.A. § 39-17-307 (prohibiting the obstruction of traffic), and Nashville Municipal Ordinance 12.40.080 (prohibiting parking in such a way as to obstruct a roadway). Of these three ordinances or statutes, only Nashville Municipal Ordinance 12.40.080 *might* have provided probable cause for the stop; T.C.A. § 39-17-307 could not have given rise to probable cause in these circumstances, and Nashville Municipal Ordinance 12.40.040 is irrelevant because it was raised for the first time on appeal. For Atnip to have had probable cause to stop Hughes for a violation of Nashville Ordinance 12.40.080, however, Hughes's conduct must actually have given rise to probable cause and Atnip himself, at the time of the stop, must have known or reasonably believed that Hughes's conduct was illegal.

### A. Nashville Municipal Ordinance 12.40.040: Parking in an Intersection

The government raised Nashville Municipal Ordinance 12.40.040, which forbids parking in an intersection, for the first time as part of this appeal. At the Suppression Hearing, moreover, Atnip – having testified regarding his belief that he could have stopped Hughes for violating three other statutes or ordinances, not including 12.40.040 – stated that the defense counsel was correct that, other than those three violations, "there [were] no other traffic violations of any sort that [he] observed." (SHT at 49.) In other words, Atnip himself stated at the Suppression Hearing that he did not know of

any other violations – obviously including 12.40.040 – that would have justified the stop. As Atnip never suggested that he had probable cause to stop Hughes for violating 12.40.040, and especially as the government failed to raise this justification before the district court, we – following the Supreme Court's lead in *United States v. Brignoni-Ponce*, 422 U.S. 873, 866 n.11 (1975) – conclude that the government has waived this argument.

### B. T.C.A. § 39-17-307: Obstructing Traffic

At both the State Preliminary Hearing and the Federal Suppression Hearing, Atnip stated that he could have cited Hughes for obstructing traffic, and thus violating T.C.A. § 39-17-307. In 2006, however, the Tennessee Supreme Court supported a trial court's conclusion that an officer does *not* have reasonable suspicion to make a stop under this statute where a defendant stops his car in one lane of a two-lane road and is not in fact blocking traffic. *State v. Williams*, 185 S.W.3d 311 (Tenn. 2006). In that case, a Chattanooga police officer on routine patrol observed the defendant's vehicle "stopped with the engine running, blocking one lane of a two-lane road," where there were no other vehicles present. *Id.* at 313. Observing that the trial court found that the defendant was not "obstructing" a street within the definition of the statute,[9] the Tennessee Supreme Court concluded that "[b]ecause the evidence does not preponderate to the contrary, we uphold the trial court's findings of fact. In light of the fact that the defendant was not obstructing traffic, Officer Sims could have had no reasonable suspicion . . . ." *Id.* at 319.

The government here argues that *Williams* is not on point, as here Hughes was obstructing *Atnip* – and so Hughes was necessarily blocking traffic. Atnip's own testimony at the Suppression Hearing, however, demonstrates that Atnip was not blocked, but could have gotten around Hughes.

---

[9]Under T.C.A. § 39-17-307(b), "'obstruct' means to render impassable or to render passage unreasonably inconvenient or potentially injurious to persons or property."

Q. [AUSA]:   Officer Atnip, if a vehicle wanted to get around the defendant where he was stopped, would that vehicle have to get into the lane of oncoming traffic?

A.  Yes, ma'am.

Q.  Would that vehicle have to violate a traffic ordinance in order to get around the defendant?

A.  Yes, ma'am.

(SHT at 25.)  Atnip, of course, had already testified that the street was entirely deserted except for Hughes and Atnip himself.  As the Tennessee Supreme Court has concluded that, in similar circumstances, an officer lacked reasonable suspicion to stop a motorist for violating T.C.A. § 39-17-307, we find that in this case Atnip necessarily lacked *probable cause* to stop Hughes under that same statute.

### C.  Nashville Municipal Ordinance 12.40.080: Parking to Obstruct

Also at the Suppression Hearing, Atnip read into the record Nashville Municipal Ordinance 12.40.080, which prohibits parking in such a way as to obstruct traffic by leaving fewer than twelve feet between the parked car and the opposite side of the road. At that Suppression Hearing, Atnip also testified that, at the time of the stop, he "guessed" or "estimated" that Hughes's vehicle had left less than twelve feet of space free on the road.  The government argues that Hughes has produced no evidence or testimony contradicting Atnip's recollection, or demonstrating how much space was left on the side of the road.  The government is correct that Atnip *might have had* probable cause to make the stop under 12.40.080; whether Atnip in fact has such probable cause remains undetermined, as it is not clear what Atnip knew or believed at the time of the stop.  If at that time of the stop, Atnip knew or reasonably believed that Hughes was parked in such a way as to leave less than twelve feet of space on the road, and Atnip knew or reasonably believed that the manner in which Hughes had parked violated the law, then Atnip had probable cause for the stop.  Given that Atnip did not mention this ordinance or issue until the Suppression Hearing, however, and that Atnip suggested at the State Preliminary Hearing that he had made the stop only for a "wellness check" and perhaps because of TCA § 39-17-307, the government has not demonstrated clearly that

at the time of the stop Atnip had the requisite knowledge to justify the stop.  We therefore remand for the district court to determine what Atnip knew or reasonably believed at the time of the stop, and whether in fact Atnip had probable cause to stop Hughes for violating 12.40.080.

The dissent suggests that by remanding we are wasting judicial resources, as Atnip could not have had probable cause to stop Hughes for violating 12.40.080.  The dissent bases its conclusion on: (1) Atnip's statement shortly after the stop that, other than "obstructing a passageway," he could not think of any reason he could have cited Hughes; (2) the photographs of the road on which Hughes was stopped; and (3) the government's concession that Hughes was not blocking any traffic when he was stopped on the street.  The third of these bases is irrelevant: Nashville Municipal Ordinance 12.40.080 prohibits parking "in such a manner or under such conditions as to leave available less than twelve feet of the width of the roadway for free movement of vehicular traffic."  The ordinance apparently applies regardless of whether the parked car is obstructing a line of others or is instead parked in an entirely deserted area.

The dissent's two remaining bases are more compelling, but do not obviate the need for remand.  In stating that he was stopping Hughes for "obstructing a passageway," Atnip – as the dissent implies – may well have been referring to T.C.A. § 39-17-307, which prohibits obstruction of public highways, streets, sidewalks, elevators, hallways, and the like.  If Atnip was only referring to this statute, then the dissent's point – that Atnip's focus on 12.40.080 *must* be an after-the-fact rationalization – is reasonable.  With his general description regarding "obstructing a passageway," however, Atnip could easily *also* have been referring to 12.40.080.  Surely, parking in such a way as to leave too little space "for free movement of vehicular traffic" could constitute "obstruction of a passageway."  In other words, the dissent's contention that Atnip was obviously not referring to 12.40.080 at the Preliminary Hearing is supported, but not proven, by the evidence available to us on appeal.

Finally, the dissent looks to the photographs of the road on which Hughes stopped, and concludes that the width of the road makes it "highly unlikely that there

would be less than twelve feet of space left for other vehicles." (Dissent at 11.) This, of course, is exactly the sort of factual question that was appropriately before the district court – and that the district court, improperly focusing on Atnip's subjective intent, failed to address. Certainly, in the summary judgment context the Supreme Court has found that appeals courts should not accept "visible fiction" that is "so utterly discredited by the record that no reasonable jury could have believed" it. *Scott v. Harris*, 550 U.S. 372, 379-81 (2007) (in which the Supreme Court relied on a videotape of a plaintiff's erratic driving in rejecting the plaintiff's contention that he was driving carefully). The photographs in this case do not fall into the same category as did the videotape in *Scott*, as the photographs do not reveal the actual width of the road and do not indicate where on the road Hughes was parked. Where the district court has failed to make any determinations regarding critical facts, the court of appeals ought not to reach a determination based upon whether a photograph makes it "unlikely" that the defendant was violating the law.

More importantly, even if Hughes *did* leave more than twelve feet of space, and so did not violate the ordinance, that does not mean that Atnip necessarily lacked probable cause for the stop. Having probable cause is not the same thing as being absolutely certain; it is possible (though obviously more difficult) for an officer to have probable cause for a stop even where the individual being stopped has not actually violated any law. The requirements of probable cause are satisfied "where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Davis* 430 F.3d 345, 352 (6th Cir. 2005) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). As the Supreme Court has observed, "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). If at the time of the stop Atnip reasonably believed that Hughes was violating 12.40.080, then whether Hughes was *actually* violating 12.40.080 is irrelevant.

The dissent correctly argues that there are serious weaknesses with the government's contention that, at the time of the stop, Atnip had probable cause to stop Hughes for violating 12.40.080. The determination of whether Atnip had probable cause, however, turns on several factual determinations, including whether on the night of the stop Atnip knew of the rule codified in 12.40.080, how wide was the road on which Hughes was parked, and *where* on that road Hughes was stopped. Such factual determinations appropriately lie within the province of the fact-finder, and it is for that reason we remand for the district court to determine what Atnip knew or reasonably believed at the time of the stop, and whether in fact Atnip had probable cause to stop Hughes for violating 12.40.080.

## IV.

We find that the district court erred in focusing on Officer Atnip's subjective intent rather than on whether Atnip objectively had probable cause to stop Hughes for violating one of the traffic statutes or ordinances raised at the Suppression Hearing. We also find that, in order to have probable cause for the stop, at the time of the stop Atnip must *both* have known facts objectively giving rise to that cause, *and* must have known or reasonably believed that those facts actually gave rise to probable cause that Hughes had committed these offenses. In other words, we find that an officer may not use after-the-fact rationalizations to justify a traffic stop where, at the time of the stop, the officer was not aware that a defendant's actions were illegal. Accordingly, we **REVERSE IN PART** and **REMAND** for the district court to determine: (1) whether Hughes's actions in stopping his car near or at the intersection, as observed by Atnip, objectively gave rise to probable cause that Hughes had violated Nashville Municipal Ordinance 12.40.080; and (2) whether, at the time of the stop, Atnip knew or reasonably believed that Hughes was in fact violating the law by parking to obstruct traffic, as prohibited by that same ordinance.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting.  When reviewing a district court's grant or denial of a motion to suppress, this Court must view the evidence "in the light most likely to support the district court's decision," which in this case would be the light most favorable to Defendant.  *United States v. Marxen*, 410 F.3d 326, 328 (6th Cir. 2005) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)) (internal quotation marks omitted).  Moreover, a district court's determination regarding a motion to suppress "will be affirmed on appeal if the district court's conclusion can be justified for any reason."  *See United States v. Hardin*, 539 F.3d 404, 417 (6th Cir. 2008) (internal quotation marks omitted).  The majority's reasoning in remanding this case for further proceedings fails to adhere to these principles.

First, the majority assumes that the district court looked at Officer Atnip's subjective intentions when evaluating Defendant's motion to suppress.  The task of the district court was to determine whether, under the totality of the circumstances, there was probable cause to believe Defendant committed a moving or parking violation.  *See United States v. Lapsins*, 570 F.3d 758, 764 (6th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  The majority approvingly quotes the following language from *United States v. Ferguson*:

> We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on *whether this particular officer in fact had probable cause to believe that a traffic offense had occurred*, regardless of whether this was the only basis or merely one basis for the stop. . . . We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop*.

8 F.3d 385, 391 (6th Cir. 1993) (en banc) (first emphasis added).

In granting Defendant's motion to suppress, the district court stated that moving and parking violations "did not play a role in Officer Atnip's decision to stop Defendant." (R. 33.) This language does not, as the majority seems to contend, establish that the district court impermissibly considered Officer Atnip's subjective intentions. To the contrary, the probable cause determination is fact dependent and turns on whether Officer Atnip "in fact had probable cause to believe that a traffic offense had occurred." *See Ferguson*, 8 F.3d at 391. In granting the motion to suppress, the district court stated that "the fact that Atnip prompted Defendant to drive away by pulling up behind his vehicle before flaring his lights further suggests that a parking violation did not form any basis for the stop." (R. 33.) Such a statement does not evidence a focus by the district court on the officer's subjective intent, but rather represents an objective look at the factual context surrounding the stop to determine whether, under the totality of the circumstances, there was probable cause. Indeed, at the suppression hearing, the district judge explicitly stated that the alleged moving and parking violations constituted an "after-the-fact reliance" by the government and commented that it "sticks out like a sore thumb" that the alleged violations were an "after-the-fact justification" for the traffic stop and subsequent search of Defendant's vehicle. (Suppression Hr'g Tr. 106, 108.) Moreover, the district court implicitly acknowledged that no moving or parking violations occurred when it noted that various cases cited by the government in support of its position included circumstances not present in the instant case, including "moving or parking violations." (R. 34.)

Second, after erroneously concluding that the district judge impermissibly looked at Officer Atnip's subjective intentions, the majority concludes that it is unclear whether Officer Atnip had probable cause to make the traffic stop. Again, the probable cause determination turns on "what the officer knew *at the time he made the stop*." *Ferguson*, 8 F.3d at 391. If an officer "only discover[s] after the stop or the arrest that the suspect had committed a traffic violation, a court could not find that probable cause existed. Such a stop would be unreasonable under the Fourth Amendment." *Id.*

Not only did Officer Atnip not issue Defendant a traffic citation, but in his investigative report Officer Atnip stated that he pulled Defendant over for "possible theft investigation and to check his welfare (lost or intoxicated)." (Appellee App. 17.) Three days after Officer Atnip stopped Defendant, at a preliminary hearing in state court, Officer Atnip testified that he stopped Defendant for suspicious activity and to ascertain the welfare of the driver. He did not claim that Defendant violated any traffic laws. Instead, when asked, Officer Atnip stated that he could have issued Defendant a citation for "[o]bstructing a passageway." (Suppression Hr'g Tr. 108.) When asked whether he could think of any other reason he could have cited Defendant, Officer Atnip stated that he could not think of any other reasons.

Almost a year and a half after the stop, at the suppression hearing, Officer Atnip claimed that Defendant also violated Nashville Municipal Ordinance 12.40.080, which states "[n]o person shall park any vehicle upon a street in such a manner or under such conditions as to leave available less than twelve feet of the width of the roadway for free movement of vehicular traffic." This assertion is problematic for several reasons. First, Officer Atnip claims Defendant violated this municipal ordinance despite his own testimony three days after the stop that he could not think of any reasons for which he could have cited Defendant other than obstructing a passageway. The majority contends that Officer Atnip could have easily been referring to Nashville Municipal Ordinance 12.40.080 when stating that he could have cited Defendant for "obstructing a passageway," but there is no basis in the record for that assertion. It is clear, as the district court noted, that this alleged violation was merely an unsupportable after-the-fact justification for the stop.

Further, as photographs illustrate, Defendant paused on a road wide enough to accommodate several cars, and thus it is highly unlikely that there would be less than twelve feet of space left for other vehicles. The government even conceded that there was no problem with blocking the road—otherwise Officer Atnip would not have parked the way he did, where he did—and characterized the nature of Defendant's stop at the

intersection as a situation in which Defendant "paused" at the intersection.[1] (Suppression Hr'g Tr. 123.) Moreover, it is puzzling to think that Officer Atnip could have had probable cause to believe Defendant was in violation of the parking to obstruct ordinance, even though it is clear that Defendant was not actually obstructing traffic.

The district court's decision must be viewed as a justifiable rejection of Officer Atnip's testimony regarding the alleged violations and as a determination that Officer Atnip had no basis for concluding that there was a moving or parking violation. Because the government failed to satisfy its burden of establishing probable cause for the stop, the district court properly granted Defendant's motion to suppress. *See United States v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009).

Viewing the evidence in the light most likely to support the district court's decision, which in this case is the light most favorable to Defendant, Officer Atnip did not have probable cause to justify the stop. Instead, the alleged violations constitute impermissible after-the-fact justifications. As the majority states, "the government should not begin poring through state and local traffic ordinances looking for any that a suspect might have violated," Maj. Op. at 7, which is clearly what the government did in this case.

The record shows that the government has repeatedly and belatedly attempted to add alleged violations by Defendant to show probable cause for the stop. Although Officer Atnip initially testified that he could have only cited Defendant for obstructing a passageway, the government argued at the suppression hearing that Officer Atnip could have cited Defendant for violations of Tennessee statute T.C.A. § 39-17-307, Nashville Municipal Ordinance 12.24.060, and Nashville Municipal Ordinance 12.40.080. Moreover, the government attempted on appeal to this Court to add two more alleged violations—violations of T.C.A. § 55-8-160(a)(14) and Nashville Municipal Ordinance

---

[1] The majority states that whether Defendant actually violated Nashville Municipal Ordinance 12.40.080 is irrelevant and that what actually matters is whether, at the time of the stop, Officer Atnip reasonably believed Defendant violated the ordinance. However, the evidence demonstrates that the circumstances were insufficient to warrant Officer Atnip's belief that Defendant committed a traffic violation. Thus, Officer Atnip could not have reasonably believed that Defendant was violating Nashville Municipal Ordinance 12.40.080.

12.40.040(A)(1)(c)—in order to establish probable cause.  Tellingly, the government abandoned its argument regarding the alleged violation of  T.C.A. § 55-8-160(a)(14) after investigation revealed that it was impossible for Defendant to have committed that offense.  Such conduct seriously undermines the government's probable cause argument and evidences the government's attempts to make after-the-fact justifications for the traffic stop.

For these reasons, I would affirm the district court's grant of Defendant's suppression motion.  An affirmance would have the added virtue of avoiding the waste of judicial resources resulting from the majority's unnecessary remand of this case.

I therefore respectfully dissent.