# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3060

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Ishmael K. Harris, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 12, 2010
Filed:  August 9, 2010

_____

Before RILEY, Chief Judge, COLLOTON and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Ishmael Kedar Harris pled guilty to possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).  He also pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  He reserved the right to appeal the district court's[1] denial of his motion to suppress evidence.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

A confidential informant advised police that Harris was distributing drugs in the Kansas City area. A drug task force team observed him with a duffel bag, driving away from his house in a black truck. After following him for a short time, a task force officer asked the Grandview police to stop Harris. A Grandview officer then followed the truck for several blocks, monitoring compliance with the traffic laws. The officer eventually stopped Harris because his truck had a tinted license cover, in violation of a local ordinance.

Asked for permission to search the truck, Harris replied that it was his girlfriend's, so he would call and ask her if it could be searched. Using a cell phone, both Harris and the officer talked to her. The officer understood that "she just basically said no." A drug dog arrived and walked around the exterior of the truck. After the dog alerted, the police searched the truck, uncovering a firearm and nearly three pounds of marijuana. Based on this search, a warrant was obtained for Harris's house, where police found an additional 29.7 pounds of marijuana.

At the suppression hearing, the officer testified that he had to "get right up on the vehicle to get the license plate." During the hearing, part of the police videotape of the stop was played, with the entire tape entered into evidence.

Reviewing a denial of a motion to suppress, this court reviews factual findings for clear error and legal conclusions de novo. *United Sates v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009). "Whether probable cause existed is a legal question reviewed de novo." *Id.*

The Grandview ordinance requires that a license plate shall be "plainly visible." **GRANDVIEW, MO., ORDINANCES § 14-177** (1993). Missouri state law also requires that the plate shall be "plainly visible" and specifically allows a transparent cover so long as the plate is "plainly visible" and its reflective qualities are not impaired. **Mo. Rev. Stat. § 301.130.5** (2007).

Harris argues that the officer did not have a valid reason for the traffic stop. He contends that the initial stop was unlawful because the license cover did not violate local or state law. Harris reasons that because the officer was able to read the plate while following him, there was no violation of law, and thus no probable cause for the stop.

The Fourth Amendment is not violated if the officer making an investigative stop has a reasonable suspicion of criminal activity. *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006); *United States v. Martin*, 411 F.3d 998, 1000 (8th Cir. 2005). Even a minor traffic violation provides probable cause for a traffic stop. *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008). Whether probable cause exists for a traffic stop is judged by whether any mistake, whether of law or fact, is objectively reasonable. *Martin*, 411 at 1001, *citing United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005).

Harris relies on a case that vacated a conviction based on an officer's mistaken belief that a cracked windshield violated a "vision obstruction" law. *See Washington*, 455 F.3d at 828. In that case, the state law prohibited only physical objects that obstruct a driver's view. *Id.* at 826-27. This court held that the officer made a mistake of law that was not objectively reasonable. *Id.* at 828.

In the *Washington* case, the officer made a mistake. Here, there was no mistake. As to the facts, the district court believed the officer's testimony that the license plate was not plainly visible. This determination, based on credibility, is not clearly erroneous. The officer's conclusion that the Grandview ordinance prohibited the license cover was objectively reasonable, as it complies with Missouri decisions interpreting the similarly-worded state statute. *See State v. Poindexter*, 941 S.W.2d 533, 535-36 (Mo. App. 1997) (because of a tinted window, temporary tag was not "plainly visible" as required by Mo. Rev. Stat. § 301.130 and the corresponding city ordinance, until the officer "stood next to it"); *State v. Young*, 425 S.W.2d 177, 178,

180 (Mo. 1968) (officer justified in stopping vehicle because it appeared car did not have license plate as required by Mo. Rev. Stat. 301.130.5, although a temporary permit was in the rear window, which officer had not noticed).

There was probable cause for the initial stop, and the resulting search that yielded the incriminating evidence was thus lawful.

The judgment of the district court is affirmed.

_____