# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-4202

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Eastern District |
| | * of Missouri. |
| John Larkin Trotter, | * |
| | * [PUBLISHED] |
| Appellant. | * |

_____

Submitted: February 16, 2007
Filed: February 23, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

John Larkin Trotter was charged with intentionally causing damage to a protected computer without authorization, in violation of 18 U.S.C. § 1030(a)(5)(A)(i). Trotter pleaded guilty, reserving the right to challenge the constitutionality of § 1030(a)(5)(A)(i) as applied. The district court[1] sentenced Trotter

_____

[1]The Honorable Rodney W. Sippell, United States District Judge for the Eastern District of Missouri.

to eighteen months' imprisonment and ordered Trotter to pay approximately $19,000 in restitution. On appeal, Trotter argues § 1030(a)(5)(A)(i) is unconstitutional as applied to his conduct: an attack on a not-for-profit organization's computer network that was connected to the Internet and used to communicate with out-of-state computers. We affirm.

I.     Background

On September 12, 2003, Trotter was fired from his job at the Midland Division of the Salvation Army in St. Louis, Missouri. Trotter had been employed as an information technology supervisor. Starting in October 2003, the Midland Division of the Salvation Army began experiencing computer network difficulties. First, numerous files were deleted from the network. Next, a computer-operated phone system was shut down. On November 8, 2003, a folder containing several files was completely erased. On November 22, 2003, someone using the account of Arnice Trotter, the defendant's mother and an employee of the Salvation Army, logged onto the Salvation Army's computer network and inserted several files with obscenities directed towards the Salvation Army. Files continued to be deleted. Some time later, a number of Salvation Army employees received pop-up messages on their computers reading "Trotter was here." The Midland Division of the Salvation Army spent over $19,000 to repair the damage inflicted by these attacks.

A law enforcement investigation discovered the intrusions into the Salvation Army's network originated from a DSL account in St. Louis, Missouri, registered to Malynda Ramsey, Trotter's girlfriend and co-habitant. The email address attached to the account included Trotter's first name, last initial, and birth year. The instant federal charge followed.

After unsuccessfully seeking dismissal of his indictment, Trotter pleaded guilty to one count of computer sabotage, a violation of 18 U.S.C. § 1030(a)(5)(A)(i). Trotter reserved the right to raise a constitutional challenge on appeal.[2]

As part of his plea agreement, Trotter admitted he sent computer commands from his residence in St. Louis to the computer network of his former employer and intentionally caused damage to the network without authorization. He further agreed that:

> The computer network of the Midland Division of the Salvation Army, located at 1130 Hampton Avenue, St. Louis, Missouri, was used in interstate communications in that (a) it was connected to and used the Internet, (b) was used to communicate with other Salvation Army computers located outside the State of Missouri, and (c) was used to communicate with computers not associated with the Salvation Army which were located outside the State of Missouri.

Additionally, at Trotter's plea hearing, Trotter stated to the court that the computers he accessed were connected to and used the Internet and were regularly used to communicate with both Salvation Army computers and non-Salvation Army computers outside the State of Missouri.

---

[2]Trotter frames his argument on appeal as a challenge to the district court's denial of his motion to dismiss for lack of jurisdiction. Because Trotter was charged with an offense against the laws of the United States, the court clearly had jurisdiction and his motion to dismiss was properly denied. 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."). A challenge to the constitutionality of a statute as applied to a particular defendant does not extinguish jurisdiction. See, e.g. United States v. Foster, 443 F.3d 978, 981 (8th Cir. 2006) (holding that the district court properly denied defendant's motion to dismiss based upon a lack of jurisdiction when defendant challenged the interstate commerce element of the Hobbs Act). The substance of Trotter's argument, however, constitutes a challenge to the computer sabotage statute's constitutionality as applied and we will address it as such.

II.    Discussion

We review a constitutional challenge to a statute de novo.  United States v. Mugan, 441 F.3d 622, 627 (8th Cir. 2006).  Title 18 U.S.C. § 1030(a)(5)(A)(i) prohibits a person from knowingly causing "the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer."  A "protected computer" is defined, in pertinent part, as a computer "which is used in interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

The Commerce Clause of the Constitution grants Congress the power to regulate interstate commerce.  U.S. Const. Art. 1, § 8, cl. 3.  This includes the ability to regulate channels of interstate commerce, instrumentalities of interstate commerce, and those activities that substantially affect interstate commerce.  United States v. Lopez, 514 U.S. 549, 558-59 (1995).  No additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated.  See, e.g., United States v. Corum, 362 F.3d 489, 494-95 (8th Cir. 2004).

Trotter challenges the application of § 1030(a)(5)(A)(i) to his conduct.  He contends the Salvation Army's computer network was not a "protected computer" and therefore his attack falls outside the scope of the statute.  He also implies that § 1030 is unconstitutional as applied to his conduct because the Salvation Army is a not-for-profit organization.  His argument, in essence, is that because "[n]early all computers [these] days are used someway in interstate commerce through the [I]nternet or private networks," the statute cannot possibly be so broad as to cover the computer network of a not-for-profit organization like the Salvation Army.  We disagree.

Trotter's admissions demonstrate the Salvation Army's computers fall within the statutory definition of a "protected computer."  Trotter admitted the computers were connected to the Internet.  "The Internet is an international network of

-4-

interconnected computers," Reno v. ACLU, 521 U.S. 844, 850 (1997), and is comparable to "a sprawling mall offering goods and services." Id. at 853. As both the means to engage in commerce and the method by which transactions occur, "the Internet is an instrumentality and channel of interstate commerce." United States v. MacEwan, 455 F.3d 237, 245 (3rd Cir. 2006); see also United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to regulate the [I]nternet, as it does other instrumentalities and channels of interstate commerce . . . ."). With a connection to the Internet, the Salvation Army's computers were part of "a system that is inexorably intertwined with interstate commerce" and thus properly within the realm of Congress's Commerce Clause power. MacEwan, 455 F.3d at 245.

Trotter also admitted the computers were used in interstate communication. He agreed in his plea agreement and again at his plea hearing that the computers were used to communicate with other computers outside the State of Missouri. Thus, the computer network of the Midland Division of the Salvation Army was "used in interstate . . . commerce or communication" and therefore fell within the ambit of the statute. 18 U.S.C. § 1030(e)(2)(B). The Salvation Army's status as a not-for-profit entity has no bearing on our analysis; it is the characteristics of the computer or computer network, not the entity using the network, that is the focus of the statute.

Our conclusion that § 1030 is constitutional as applied to an attack on the Salvation Army's computer network is consistent with the Seventh Circuit's analysis in a similar case dealing with § 1030. In United States v. Mitra, 405 F.3d 492 (7th Cir. 2005), the defendant was convicted of causing damage to the computerized communication network used by emergency responders in Madison, Wisconsin. He challenged the application of § 1030 to his conduct. The Seventh Circuit held the communication system harmed by the defendant's conduct was protected by the statute because it was engaged in interstate communication and, specifically, it was engaged in communication on the electromagnetic spectrum regulated by the Federal Communications Commission. Id. at 496. Like the Internet, the spectrum is a channel

of interstate commerce subject to regulation by Congress.  <u>Id.</u>  In <u>Mitra</u>, the defendant argued the intrastate nature of his attack took it outside the constitutional applicability of the statue.  Judge Easterbrook, writing for the court, explained the location of the attack is not determinative because "[o]nce the *computer* is used in interstate commerce, Congress has the power to protect it from a local hammer blow, or from a local data packet that sends it haywire."    <u>Id.</u>  Likewise, the nature of the organization using the computer is irrelevant; once the *computer* is used in interstate commerce, Congress has the power to protect it.

III.    Conclusion

       For the reasons stated herein, the judgment of the district court is affirmed.
_____