# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1400
_____

United States of America

*Plaintiff - Appellee*

v.

Thomas Coleman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska
_____

Submitted: October 30, 2012
Filed: November 8, 2012
_____

RILEY, Chief Judge, BEAM and BYE, Circuit Judges.
_____

RILEY, Chief Judge.

Thomas Coleman conditionally pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Coleman reserved the right to appeal the district court's[1] denial of his motions to suppress evidence seized from his

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the recommendation of the Honorable Cheryl R. Zwart, United

vehicle. Coleman also appeals the armed career criminal sentence enhancement he received under 18 U.S.C. § 924(e). Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

On July 31, 2010, Coleman was driving his motor home on Interstate 80 in Hall County, Nebraska. Nebraska State Patrol Trooper Jason Bauer observed two vehicles with Florida license plates traveling eastbound on Interstate 80 under the posted speed limit. Trooper Bauer began following the vehicles and observed the second vehicle, Coleman's motor home, swerve. The passenger-side tires of the motor home twice crossed over the fog line at the shoulder of the highway. Trooper Bauer stopped Coleman for driving on the shoulder.

Trooper Bauer asked Coleman to sit with him in his patrol car while the officer wrote a warning citation and checked Coleman's license status and criminal history. Trooper Bauer questioned Coleman about his travel plans and whether he had a criminal history, which Coleman denied. The state patrol dispatch was unable to check Coleman's criminal history with only a name and date of birth so Trooper Bauer relayed Coleman's social security number. Dispatch responded, and Trooper Bauer learned Coleman had an extensive criminal history, including drug, robbery, and weapons offenses. Trooper Bauer again asked Coleman if he had ever been arrested, and Coleman again said he had not. When Trooper Bauer questioned Coleman about drug use, Coleman admitted he used medically prescribed marijuana while in California a few months prior. Trooper Bauer inquired if Coleman had any medical marijuana with him. Coleman replied that he did in the front part of the motor home. Trooper Bauer then placed Coleman in the backseat of his patrol car while he entered the motor home.

States Magistrate Judge for the District of Nebraska.

Trooper Bauer entered the motor home through the passenger-side door where Coleman had exited the vehicle. Trooper Bauer conducted a sweep of the motor home to ensure it was unoccupied. In a large compartment under the bed, Trooper Bauer located a black weapons-type bag. Trooper Bauer opened the bag and discovered a high-point rifle and ammunition. Trooper Bauer confirmed with dispatch that Coleman was a convicted felon. Trooper Bauer then located marijuana in the front of the motor home.

On October 19, 2010, a grand jury charged Coleman with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Coleman moved to suppress the evidence obtained from the stop and the search of the motor home. After a hearing, the magistrate judge recommended denial of Coleman's motions[2] because (1) Trooper Bauer had probable cause for the stop, or alternatively the stop was a lawful investigatory detention under Terry v. Ohio, 392 U.S. 1 (1968); (2) any extension of the stop was de minimis, and justified by reasonable suspicion; (3) the search of the motor home was justified by probable cause and also as a protective sweep necessary for officer safety; and (4) Coleman was not "in custody" for Miranda purposes when Trooper Bauer questioned him. On June 3, 2011, after de novo review, the district court adopted the magistrate judge's findings and recommendation and denied Coleman's motions to suppress in all respects. On September 29, 2011, Coleman entered a conditional guilty plea, reserving his right to appeal the district court's suppression decision.

At sentencing, the district court applied an armed career criminal sentence enhancement under 18 U.S.C. § 924(e), which mandates a minimum 15-year prison sentence. Coleman objected to each of the three prior convictions offered to support

[2]Coleman filed a motion to suppress, later amended the motion to suppress, and then filed a supplemental motion. The magistrate judge's recommendation addressed all of Coleman's motions to suppress evidence.

the enhancement. The district court overruled Coleman's objections, finding all three of the convictions met the statutory requirements under 18 U.S.C. § 924(e). The district court sentenced Coleman to 180 months imprisonment.

On appeal, Coleman argues the district court erred in finding (1) probable cause existed for the stop; (2) reasonable suspicion supported extension of the stop; (3) Coleman was not subjected to custodial interrogation; (4) probable cause or concern for the officer's safety justified search the motor home; (5) Coleman's 1998 robbery and aggravated assault conviction qualified as a violent felony under 18 U.S.C. § 924(e); (6) Coleman's 1999 possession of marijuana with intent to distribute conviction qualified as a serious drug offense under 18 U.S.C. § 924(e); and (7) Coleman's 1994 attempted sale of a controlled substance conviction also qualified as a serious drug offense under 18 U.S.C. § 924(e).

## II. DISCUSSION
### A. Probable Cause for the Stop

"We review the district court's factual findings in support of its denial of a motion to suppress for clear error and its legal determination of probable cause de novo." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005). "A district court's findings regarding witness credibility are 'virtually unreviewable on appeal.'" United States v. Taylor, 519 F.3d 832, 835 (8th Cir. 2008) (quoting United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992)).

A traffic violation, no matter how minor, provides an officer with probable cause to stop the driver. See United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001). "An officer is justified in stopping a motorist when the officer 'objectively has a reasonable basis for believing that the driver has breached a traffic law.'" United States v. Mallari, 334 F.3d 765, 766-67 (8th Cir. 2003) (quoting United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996)). The government argues Trooper Bauer observed Coleman violate Neb. Rev. Stat. § 60-6,142, which declares: "No person

shall drive on the shoulders of highways," with three narrow exceptions. The district court found credible Trooper Bauer's testimony that he twice observed Coleman swerve over the fog line separating the right lane of the highway from the shoulder. Coleman argues momentarily crossing onto the shoulder does not constitute a violation of the statute and therefore the trooper lacked probable cause to stop Coleman's vehicle. We disagree.

"[S]tate courts are the ultimate expositors of state law." United States v. Adler, 590 F.3d 581, 584 (8th Cir. 2009) (quoting Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)) (internal quotation marks omitted). The magistrate judge's recommendation in this case noted there was little Nebraska case law specifically interpreting the statutory language at issue. What case law existed provided no authority to support Coleman's claim that momentarily crossing the fog line did not constitute a violation of the law. See State v. Davis, No. A-07-104, 2007 WL 2257886, at *3 (Neb. Ct. App. Aug. 7, 2007).

Coleman cites a federal district court case, United States v. Magallanes, 730 F. Supp. 2d 969, 977 (D. Neb. 2010), which held a driver violates Neb. Rev. Stat. § 60-6,142 only if he uses the shoulder as a "thoroughfare" and not by momentarily crossing onto the shoulder. However, Magallanes was decided a few days after Trooper Bauer made his stop of Coleman's motor home, and our court's interpretation of the Nebraska statute—then binding on the Magallanes district court—was that momentarily crossing the fog line was a violation. See Mallari, 334 F.3d at 767; United States v. Pollington, 98 F.3d 341, 342 (8th Cir. 1996). Although Nebraska's highest court had not—and has not yet—issued an authoritative interpretation of the statute,[3] "this Court should not expect state highway patrolmen to interpret the traffic

---

[3]A Nebraska Court of Appeals case, decided after the magistrate judge's recommendation, concluded that briefly crossing the fog line and traveling on the shoulder does constitute a traffic violation under Nebraska law. See State v. Medina,

laws with the subtlety and expertise of a criminal defense attorney." United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999). Considering the precedent at the time of the stop, Trooper Bauer had an objectively reasonable basis for believing Coleman violated the statute. The district court did not err in overruling Coleman's motion to suppress on the basis of a lack of probable cause to stop Coleman.

### B. Reasonable Suspicion to Extend the Stop

"A constitutionally permissible traffic stop can become unlawful, . . . 'if it is prolonged beyond the time reasonably required to complete' its purpose." United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). An officer may detain the occupants of a vehicle while performing routine tasks such as obtaining a driver's license and the vehicle's registration and inquiring about the occupants' destination and purpose. See id. "[I]f the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion." Id. at 1120. Reasonable suspicion is "'a particularized and objective basis' for suspecting criminal activity." United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). We review de novo whether the facts of this case created a reasonable suspicion. See id.

Coleman argues Trooper Bauer's questioning regarding drug use improperly exceeded the scope of a normal traffic stop. We disagree. Trooper Bauer was

No. A-11-377, 2011 WL 2577268, at *5 (Neb. Ct. App. June 28, 2011). On October 11, 2012, the Supreme Court of Nebraska heard argument on these issues in State v. Magallanes, No. S-11-1033, but, as of the date of this opinion, has not published a decision. We find it unnecessary to await an authoritative interpretation of state law because Trooper Bauer, at the time of the stop, acted "in objectively reasonable reliance on binding appellate precedent." Davis v. United States, 546 U.S. ___, ___, 131 S. Ct. 2419, 2423-24 (2011).

justified in asking Coleman about drug use in order to eliminate drug use as a possible cause of Coleman's swerving. Thereafter, Coleman's dishonesty regarding his criminal history reasonably raised Trooper Bauer's suspicions and prompted him to ask clarifying questions. See United States v. Riley, 684 F.3d 758, 763-64 (8th Cir. 2012) (finding undue nervousness, conflicting answers, and misrepresentation of drug-related criminal history gave the officer reasonable suspicion criminal activity was afoot); United States v. Suitt, 569 F.3d 867, 872 (8th Cir. 2009) (finding evasive and incomplete answers gave the officer reasonable suspicion to prolong the traffic stop for additional questioning).

Even if Trooper Bauer lacked reasonable suspicion to extend the questioning, any intrusion on Coleman's Fourth Amendment rights was de minimis. Coleman's traffic stop was permissibly prolonged for a brief period because the state patrol dispatch was unable to obtain Coleman's personal history information by using only his name and date of birth. See United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007) ("When there are complications in carrying out the traffic-related purposes of the stop . . . police may reasonably detain a driver for a longer duration than when a stop is strictly routine."). After Trooper Bauer provided Coleman's social security number to dispatch and received Coleman's criminal history, Trooper Bauer's additional questioning was brief, lasting only a couple of minutes. We have upheld such short detentions as de minimis intrusions. See United States v. Robinson, 455 F.3d 832, 834 (8th Cir. 2006).

## C.    Custodial Interrogation

Coleman argues his Fifth Amendment rights were violated when Trooper Bauer questioned him without first advising Coleman of his Miranda rights. Miranda warnings are required when an individual has been subjected to custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). In reviewing

custody determinations, we will "uphold findings of historical fact unless clearly erroneous, but . . . apply the controlling legal standard to the historical facts utilizing an independent review." United States v. Axsom, 289 F.3d 496, 500 (8th Cir. 2002).

Although a motorist is technically seized during a traffic stop, Miranda warnings "are not required where the motorist is not subjected to the functional equivalent of a formal arrest." United States v. Morse, 569 F.3d 882, 884 (8th Cir. 2009); see also Berkemer v. McCarty, 468 U.S. 420, 441 (1984) (holding Miranda warnings were not required where the defendant "failed to demonstrate . . . he was subjected to restraints comparable to those associated with a formal arrest").

The district court found Coleman was seated in the front seat of Trooper Bauer's patrol car when he was questioned. Coleman was not handcuffed and had not been told his detention would be anything other than temporary. Trooper Bauer's tone was conversational and the questions were limited in number and scope. Based on the totality of the circumstances, the district court did not err when it found Coleman was not subjected to restraints comparable to those of a formal arrest. Trooper Bauer was not required to give Miranda warnings before questioning Coleman.

### D. Search of the Motor Home

We review the district court's findings of fact for clear error, and we review de novo whether the search of Coleman's motor home violated the Fourth Amendment. See Olivera-Mendez, 484 F.3d at 509. Officers may search a vehicle without a warrant if they have probable cause to believe the vehicle contains contraband. See United States v. Ross, 456 U.S. 798, 800 (1982). This automobile exception applies equally to motor homes. See California v. Carney, 471 U.S. 386, 390-94 (1985).

Coleman told Trooper Bauer there was marijuana in his vehicle, providing probable cause to search the vehicle for drugs. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Ross, 456 U.S. at 825. Trooper Bauer could lawfully search every part of the motor home where marijuana might have been, including under the bed where the weapon was found.

Assuming the trooper lacked probable cause to search beyond where Coleman told him the marijuana was located in the motor home, the trooper was justified, at the time, in performing a protective sweep to make sure no passengers were hiding in the motor home. See United States v. Thomas, 249 F.3d 725, 730 (8th Cir. 2001) (explaining the "search of the van was reasonably necessary for the officers' personal safety in conducting the stop because other occupants in the van could pose a significant danger to the officers").

Coleman argues the motor home was more like a residence than a vehicle, and as such, the sweep should have been limited to the space within Coleman's immediate control. However, a motor home in transit on a public highway is being used as a vehicle and is therefore subject to a reduced expectation of privacy. See Carney, 471 U.S. at 392-93. In the context of a traffic stop, we have repeatedly held "officers may take such additional steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." Thomas, 249 F.3d at 729 (quoting United States v. Doffin, 791 F.2d 118, 120 (8th Cir. 1986)) (internal quotation marks omitted). The district court found that the space under the bed was large enough to hide a person, and the sweep justifiably could extend to this area for the officer's protection from a possible hidden assailant.

Once Trooper Bauer observed the weapons-type bag in plain view during the lawful protective sweep, and the bag was readily identifiable as a gun case, the trooper had probable cause to believe the bag contained contraband, see, e.g., United States v. Banks, 514 F.3d 769, 774-75 (8th Cir. 2008), because Trooper Bauer knew Coleman's criminal history included felony offenses. Because the search of the motor home was conducted with probable cause, and was reasonable otherwise, the district court did not err in finding Coleman's Fourth Amendment rights had not been violated.

### E.     Armed Career Criminal Act Enhancement

Under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), a person who violates § 922(g) (prohibiting any person who has been convicted of a crime punishable by imprisonment of more than one year from possessing or transporting a firearm in interstate commerce) and has three previous convictions "for a violent felony or a serious drug offense" shall be subject to a minimum term of fifteen years imprisonment. Coleman contends the district court erred in determining Coleman's three prior convictions each constituted "a violent felony or a serious drug offense."

### 1.     1998 Robbery and Aggravated Assault Conviction

We review de novo whether a prior conviction qualifies as a violent felony under 18 U.S.C. § 924(e). See United States v. Jones, 574 F.3d 546, 549 (8th Cir. 2009). A "violent felony" is defined in § 924(e)(2)(B) as:

> any crime punishable by imprisonment for a term exceeding one year . . . that–
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

In determining whether an offense is a violent felony under the statute, we apply the "categorical approach" adopted by the Supreme Court in Taylor v. United States, 495 U.S. 575, 600 (1990). See United States v. Forrest, 611 F.3d 908, 909-10 (8th Cir. 2010). "Under this approach, [we] look[] to the fact of conviction and the statutory definition of the prior offense and determine[] whether the full range of conduct encompassed by the state statute qualifies to enhance the sentence." United States v. Sonnenberg, 556 F.3d 667, 670 (8th Cir. 2009). Where the statute provides alternative sets of elements, one or more of which does not meet the criteria of a violent felony, we will utilize the "modified categorical approach" and examine "the charging document, jury instructions, plea agreement or plea hearing transcript, and comparable judicial records." Forrest, 611 F.3d at 910; see also Shepard v. United States, 544 U.S. 13, 16 (2005).

Coleman argues his 1998 robbery/aggravated assault conviction in Georgia was insufficient for enhancement because the conviction record did not specify under which statute Coleman was convicted and the district court, therefore, did not have sufficient information to determine whether Coleman faced a year or more in prison. We disagree.

The Georgia indictment charged Coleman (under the alias "Marbo Shipman") with "unlawfully, with intent to commit theft, by the use of force, tak[ing] from the person and immediate present [sic] of [victim], a purse and contents of value and the property of the said [victim]." The Georgia statute in place at the time of the conviction used matching language, describing the crime of robbery as when a person

-11-

"with intent to commit theft, . . . takes property of another from the person or the immediate presence of another . . . [b]y use of force." The statute specified a punishment for a conviction of one to twenty years imprisonment.

Coleman also was convicted of aggravated assault in the 1998 proceedings. The indictment charged Coleman with committing "an assault upon the person of [the victim], by throwing her to the ground and striking and beating her with his closed fists, a means likely to cause serious bodily injury when used offensively against a person." The Georgia statute offered into evidence described the crime of aggravated assault as when a person "assaults (1) [w]ith intent to murder, to rape, or to rob; (2) [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." The statute specified a punishment of one to twenty years imprisonment.

Coleman does not point to any other statute which might have applied to the charges. The indictments and statutes demonstrate that both of the offenses meet the definition of a violent felony under ACCA.

### 2. 1999 Marijuana Possession Conviction

"We review de novo whether a prior conviction constitutes a serious drug offense under [18 U.S.C.] § 924(e)." United States v. Bynum, 669 F.3d 880, 885 (8th Cir. 2012). A "serious drug offense" is defined in § 924(e)(2)(A)(ii) to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." Again, we use the categorical approach. See Bynum, 669 F.3d at 885.

Coleman argues his 1999 conviction for possession of marijuana with intent to distribute was insufficient because it failed to specify a statute and therefore the district court did not have sufficient information to determine whether Coleman faced a year or more in prison. The indictment charged Coleman with "unlawfully possess[ing] and hav[ing] under her [sic] control marijuana, with intent to distribute said marijuana." Under the Georgia statute applicable at the time of the conviction, it was "unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." The specified punishment was one to ten years imprisonment.

Coleman argued at sentencing the section of the statute providing the applicable punishment stated, "except as otherwise provided" in two other named sections, and the government failed to prove that the other two sections did not apply. After a recess, the government provided copies of the other sections as well as two Georgia cases, Tripp v. State, 476 S.E.2d 844, 846 (Ga. Ct. App. 1996) (applying section 16-13-2 of the statute) and Capers v. State, 470 S.E.2d 887, 894 (Ga. Ct. App. 1996) (applying section 16-13-31 of the statute), which demonstrated one of the listed sections imposed statutory minimum sentences for certain quantities of drugs, and the other allowed for deferral to drug court for first time offenders. There was no indication either of the statutes applied to Coleman's conviction. The 1999 possession of marijuana with intent to distribute conviction qualifies as a serious drug offense under ACCA.

### 3. 1994 Attempted Sale of a Controlled Substance Conviction

Coleman argues his 1994 conviction for "attempted" sale of a controlled substance does not qualify as a serious drug offense under 18 U.S.C. § 924(e)(2)(A) because the evidence was insufficient to establish whether Coleman had counsel at the time of conviction. After the government has proved the fact of conviction, the

defendant then has the burden of showing the conviction is constitutionally infirm. See United States v. Levering, 431 F.3d 289, 294 (8th Cir. 2005). Coleman did not meet this burden.

Coleman further argues the inclusion of "attempted" under the definition of violent felony in § 924(e)(2)(B)(i) suggests an attempted offense should not qualify as a serious drug offense under § 924(e)(2)(A), which does not explicitly include the word "attempted." We disagree. As the Second Circuit noted in United States v. King, 325 F.3d 110, 113 (2d Cir. 2003), the word "involving" in the statutory definition of a serious drug offense suggests an expansive reading. Congress has demonstrated that it does not view attempted drug trafficking offenses as any less serious than completed acts. See, e.g., 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."). Because the "attempted criminal sale of a controlled substance" involves distributing or possessing with intent to distribute a controlled substance, this conviction also qualifies under ACCA.

The district court did not err when it found Coleman eligible for an armed career criminal sentence enhancement, sentencing him to the mandatory minimum of fifteen years imprisonment.

III. CONCLUSION

We affirm.

_____