# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1209

_____

United States of America

*Plaintiff - Appellee*

v.

Timothy DeFoggi

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 19, 2015
Filed: October 6, 2016

_____

Before RILEY, Chief Judge, BEAM and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Timothy DeFoggi was convicted of multiple child pornography-related offenses following a jury trial. On appeal, he challenges several pretrial and trial rulings, argues there was insufficient evidence to support his convictions, and asserts his 300-month sentence was imposed in violation of the Eighth Amendment. We affirm in part and reverse in part.

## I. Background

The FBI began an investigation in 2012 into a computer server in Bellevue, Nebraska, that was hosting child-pornography websites on the "Tor" network. The Tor network is designed to keep a user's identity anonymous by requiring special software that obscures a user's physical location. The network routed communications through a network of other computers, making traditional IP identification techniques ineffective. One of the hosted websites was called "PedoBook." The website operated from March 2012 until December 2012, advertising and distributing child pornography and hosting discussions about the sexual abuse of children. On November 18, 2012, the FBI seized the computer server hosting PedoBook, but continued to operate the website for investigatory purposes until shutting it down completely on December 8, 2012. As part of this investigation, the FBI obtained an order from the United States District Court for the District of Nebraska allowing it to monitor electronic communications of PedoBook users. Both before and after its seizure by law enforcement, agents viewed, examined, and documented the contents of PedoBook, which contained thousands of photos and videos depicting images of child pornography.

PedoBook had over 8,100 members, each registered with a username and password. Once registered, a member could set up a profile with a picture, could request access to private groups, and could use a messages feature not available to other users. Members with profiles were able to set up groups based on specific interests and subcategories for posting distinct types of child pornography.

Timothy DeFoggi, the former acting director of cyber security at the United States Department of Health and Human Services, was a registered member and user of PedoBook. He used the username "fuckchrist" and the display name "Ptasseater." He registered on March 2, 2012. DeFoggi and other PedoBook members occasionally shared personal information, including e-mail addresses, in private messages so they

-2-

could communicate with other PedoBook members and distribute child pornography on a one-to-one basis. Evidence showed that DeFoggi joined 32 groups on PedoBook between March 2, 2012, and December 8, 2012. Between April 19, 2012, and December 5, 2012, he exchanged numerous private messages with other PedoBook members expressing, among other things, an interest in the rape and murder of infants and toddlers.

DeFoggi moved to suppress evidence obtained through the interception of electronic communications and evidence obtained during a search of his residence. He also moved to preclude the government from introducing at trial what he termed "fantasy chat private messages" sent to and from his username, arguing the messages were not relevant and were overly prejudicial. The district court denied these motions.

After a jury trial, DeFoggi was convicted on all counts: knowingly engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g) (Count 1), conspiracy to advertise child pornography in violation of 18 U.S.C. § 2251(d)(1) and (e) (Count 2), conspiracy to distribute child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) (Count 3), and knowingly accessing a means or facility of interstate commerce to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Counts 4–7). The district court granted DeFoggi's motion for judgment of acquittal in part by vacating the convictions on Counts 2 and 3 as lesser included offenses of Count 1, and denied his motion for a new trial.

On January 5, 2015, the court sentenced DeFoggi to 300 months' imprisonment on Count 1, and lesser amounts for all other counts of conviction (Counts 4–7), to run concurrently. DeFoggi timely appealed.

## II. Discussion

### A.    Application for Interception of Electronic Communication

DeFoggi argues that the district court erred in denying his motion to suppress evidence obtained through the interception of electronic communications, because the application to intercept his communications was not properly authorized.  At the suppression hearing, however, the magistrate judge found to the contrary, and DeFoggi did not object to this finding.  Noting DeFoggi's lack of objection, the district court affirmed the magistrate judge's finding.  Because DeFoggi filed no objection to the magistrate judge's report and recommendation on this issue, "we review the findings of fact underlying his appeal for plain error and the admissibility of [the evidence obtained through the interception of his electronic communications] de novo."  United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005).

An application to intercept electronic communications must contain the identity of the authorized official who approved it.  See 18 U.S.C. § 2518(1).[1]  Intercepted electronic communications may be suppressed upon a showing that, as relevant here, "the order of authorization or approval under which it was intercepted is insufficient on its face," or "the interception was not made in conformity with the order of authorization or approval."  18 U.S.C. § 2518(10)(a)(i)–(ii).

---

[1]The statute states in relevant part: "Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication . . . shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information: (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application. . . ." 18 U.S.C. § 2518(1).

The application submitted in this case stated that "[a] copy of the memorandum of an official specially designated by the Attorney General of the United States authorizing this application is attached to this application as Exhibit A." DeFoggi argues that he did not receive the memorandum attachment in discovery, and that there was nothing to show that the approving judge received the required memorandum either. The government acknowledged to the district court that the memorandum may not have been included in the original discovery materials provided to DeFoggi at the start of the case. Whether or not DeFoggi received it, the relevant question for review is whether the approving judge had the document at the time she approved the application to intercept electronic communications.

At the hearing on DeFoggi's motion to suppress, the government presented an uncertified copy of a letter signed by Kenneth A. Blanco, Deputy Assistant Attorney General. During the suppression hearing, the magistrate judge requested certified copies of the application and the authorizing letter from Blanco. DeFoggi does not allege that Blanco was not authorized to sign the application. See 18 U.S.C. § 2516(1) (a Deputy Assistant Attorney General is an officer qualified to authorize the application). Rather, he asserts that the letter identifying Blanco as the authorizing officer was not attached to the application submitted to the approving judge.

The failure to attach authorization documents can warrant suppression, see United States v. Lomeli, 676 F.3d 734, 741–42 (8th Cir. 2012), but here, the magistrate judge specifically found that "the Chief Judge of the U.S. District Court for the District of Nebraska authorized the interception of . . . DeFoggi's communications," on November 18, 2012, and "[t]he application submitted in connection with that authorization included, as an exhibit, a copy of a memorandum signed by Kenneth A. Blanco . . . ." The magistrate judge therefore concluded that "the authorizing judge . . . had the name of the actual, statutorily designated official who had indeed authorized the application," and that DeFoggi's motion to suppress

should be denied. The district court adopted this finding. DeFoggi offers no argument as to why this finding is plainly erroneous, asserting only that "there is no record to demonstrate the approving judge received [the signed letter from Blanco]." But, after examining the exhibits, the court ruled otherwise. Under these circumstances, we cannot say the district court erred in finding that the application as presented to the district court included the necessary authorization documents. Because the application was properly authorized, and the district court had this information at the time of approval, the district court did not err in denying DeFoggi's motion to suppress. See Lockett, 393 F.3d at 837.

## B.    Search Warrant

DeFoggi also argues the district court erred in denying his motion to suppress evidence obtained during the search of his home on April 9, 2013, because the affidavit in support of the warrant did not establish probable cause. In particular, he argues that there was insufficient information linking him to PedoBook, and thus no probable cause to believe that evidence of criminal activity would be found at his residence. "We review *de novo* the district court's legal determination of probable cause." United v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citing United States v. Coleman, 700 F.3d 329, 334 (8th Cir. 2012)).

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (quotations and citations omitted). We utilize a totality of the circumstances test and a common sense approach when reviewing whether probable cause exists. Id. (quotations and citations omitted). We "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." Id. (quotation omitted).

The search warrant here was supported by probable cause. The warrant application included an affidavit written by Special Agent Patricia J. Teakle of the FBI, which carefully described PedoBook, the FBI's methods of identifying its users, and the link between DeFoggi and the website. As an initial matter, the affidavit explained that because it was on the Tor network, PedoBook could not be accessed without the installation of appropriate software and knowledge of its exact web address. A user could obtain the web address for the website directly from other users, or from internet postings describing PedoBook's content and location, but not from any type of web search. Accessing PedoBook therefore required numerous affirmative steps by the user, making it extremely unlikely that a user would stumble upon it without knowing that its purpose was to advertise and distribute child pornography and understanding the content to be found there.

The affidavit also explained that, through the government's monitoring and searches of the data logs once it had control of PedoBook, the FBI concluded that an account was created on or about April 18, 2012, with the username "fuckchrist" and display name "Ptasseater." The affidavit included examples of activity conducted on PedoBook by that member, including the filenames of the child pornography images accessed and the private messages sent between that member and others. An FBI "online covert employee" contacted that member via the private messaging feature of PedoBook, and the member gave the FBI employee an email address (fuckchrist@tormail.org) and told him he normally accessed the Tor network from 4:00 a.m. to 6:00 a.m. and 4:30 p.m. to 6:00 p.m.

The affidavit then described how the FBI connected that username and display name to DeFoggi. Several pages of the affidavit discussed how DeFoggi used these same names for multiple child pornography websites, where he made comments very

similar in substance and tone to those made on PedoBook.  The FBI obtained an IP address associated with the account "ptasseater" from one such website – an image hosting website – which was connected to Verizon Internet Services.  Verizon then provided the personal information for the individual associated with that IP address during the time period in which that user accessed child pornography on the image hosting site – and that individual was DeFoggi.  Other IP addresses used to access child pornography were connected to DeFoggi in a similar manner.

Moreover, the affidavit explained that a subject under FBI investigation for activities related to child exploitation material had provided the FBI with information on an individual initially identified as "Jeff," who was a member of "boylover.net," a known website for underage male child pornography, and used a variety of email addresses including "ptasseater@hotmail.com."  The informant also provided the FBI with a cell phone number for "Jeff" and told them of an individual who had personally met "Jeff."

"Jeff" turned out to be DeFoggi, and he told the individual (then under FBI surveillance) in-person that his real name was Tim, that he worked in the DC area, that he had a government security clearance, and that he had a domestic partner.  An open source database check confirmed that DeFoggi lived at 20311 Crown Ridge Court, Germantown, Maryland.  The FBI then confirmed through the United States Postal Service and visual surveillance that DeFoggi received mail at that residence and maintained a vehicle registered in his name there.  The cell phone number for "Jeff" was eventually linked to DeFoggi.  Finally, through surveillance with a pen register and a trap and trace obtained for DeFoggi's internet account, the FBI learned that computers in DeFoggi's home were connected to the Tor network at the same times that "ptasseater" claimed to be online in the private chats over PedoBook.

DeFoggi counters that because a Myspace profile included in the affidavit did not belong to him, the FBI had failed to link him to the accounts with the usernames "ptasseater" and "fuckchrist." DeFoggi argues others could have used the same usernames, and that because the affidavit did not identify an IP address for DeFoggi that linked him directly to PedoBook (although the FBI connected IP addresses linked to DeFoggi to other child pornography websites), there was no probable cause. Given the cumulative information included in the search warrant application linking DeFoggi to multiple child pornography websites including PedoBook, these assertions do not detract from our conclusion that probable cause existed. The affidavit in support of the search warrant provided more than enough information to support a finding of probable cause to believe that evidence of criminal activity would be found at DeFoggi's residence.

## C.    Evidence of Chat Messages

DeFoggi also argues that the district court erred in denying his motion to exclude evidence of his "fantasy chat messages" at trial because they were not relevant under Federal Rule of Evidence 401 and were unfairly prejudicial under Federal Rule of Evidence 403. Challenges to evidentiary rulings are reviewed for an abuse of discretion. United States v. Sewell, 457 F.3d 841, 843 (8th Cir. 2006). We will reverse only if an error "affects the substantial rights of the defendant" or has "more than a slight influence on the [jury's] verdict." United States v. Yarrington, 634 F.3d 440, 447 (8th Cir. 2011) (quoting United States v. Elbert, 561 F.3d 771, 775 (8th Cir. 2009)). "We will not reverse if the error was harmless." Id.

Rule 401 states that to be relevant, evidence must tend to make a fact more or less probable or "be of consequence in determining the action." Fed. R. Evid. 401. We have previously held that personal chats on child pornography websites are

admissible as circumstantial evidence associating the defendant "with the child pornography found on his computer," and that "the district court was within its discretion to admit" such chats. United States v. Manning, 738 F.3d 937, 943 (8th Cir. 2014). As in Manning, "portions of the chats contained identifying information about [DeFoggi]." Id. In the chats, DeFoggi wrote at length about his interest in child pornography and solicited child pornography from other members of PedoBook. DeFoggi's chats therefore "revealed [his] identity, his preferences for different types of child pornography, and his desire to exchange child pornography with other people online." Id. at 944. DeFoggi was charged with knowingly accessing a means or facility of interstate commerce to view child pornography, and the chats were relevant (once DeFoggi was connected to his usernames) as a means of identifying DeFoggi as the person knowingly accessing the child pornography on his computer. The district court thus did not abuse its discretion in determining that DeFoggi's chats were relevant evidence under Rule 401.

DeFoggi argues that even if the chats were relevant, the district court nonetheless erred in admitting them because they were unfairly prejudicial due to their shocking nature. Relevant evidence may still be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. And we agree that chats fantasizing about raping and killing children "are by their very nature disturbing," and "highly likely to generate an emotional response." United States v. Evans, 802 F.3d 942, 946 (8th Cir. 2015). But the disturbing nature of otherwise relevant evidence cannot be the sole reason to exclude it. Id. ("[Rule 403] does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case," but rather "evidence that is *unfairly* prejudicial.'" (quoting United States v. McCourt, 468 F.3d 1088, 1092 (8th Cir. 2006))); see also United States v. Johnson, 463 F.3d 803, 809 (8th Cir. 2006).

While the pure volume of the chats admitted into evidence concerns us, see Evans, 802 F.3d at 946, DeFoggi makes only the most general of arguments on appeal as to how their admission prejudiced him. He does not identify any specific chats he believes are especially problematic; and he does not explain how the jury was prejudiced, how the chats may have unfairly affected their view of the charges against him, or how the chats were more disturbing than the images themselves. DeFoggi calls the chats "shocking," but "does not articulate what unfair prejudice resulted from the publication of this evidence to the jury." Id. (citing McCourt, 468 F.3d at 1092, for the proposition that "[t]he Supreme Court has advised that Rule 403 requires a preliminary showing of unfair prejudice before the need to balance the probative value of the evidence and its alternatives arises"). Simply characterizing the evidence in this way does not give us sufficient grounds to conclude that the district court abused its discretion in admitting the chats.[2] "Without a preliminary showing of prejudice, 'we need not consider or weigh the probative value'" of the chats. Id. (quoting United States v. Worthey, 716 F.3d 1107, 1115 (8th Cir. 2013)).

### D.     Sufficiency of the Evidence

DeFoggi alleges that the government failed to adduce sufficient evidence to convict him beyond a reasonable doubt of a child exploitation enterprise and access with intent to view child pornography. We review the sufficiency of the evidence in a jury trial de novo, but examine the evidence in the light most favorable to the jury's verdict, resolving factual disputes and accepting all reasonable inferences in support of the verdict. Manning, 738 F.3d at 945. We must uphold the jury's verdict "if there is an interpretation of the evidence that would allow a reasonable-minded jury to

---

[2]DeFoggi repeats his assertion that his chat messages were overly prejudicial with regard to his motion for a new trial. We reject his challenge to the denial of his motion for a new trial based on his chat messages for these same reasons.

conclude guilt beyond a reasonable doubt." United States v. Thompson, 285 F.3d 731, 733 (8th Cir. 2002).

### 1.    Count 1

DeFoggi was convicted of engaging in a child exploitation enterprise (CEE), in violation of 18 U.S.C. § 2252A(g).  Section 2252A(g) provides:

> (1) Whoever engages in a child exploitation enterprise shall be fined under this title and imprisoned for any term of years not less than 20 or for life.
>
> (2) A person engages in a child exploitation enterprise for the purposes of this section if the person violates [certain other sections] as a part of a series of felony violations constituting three or more separate incidents and involving more than one victim,[3] and commits those offenses in concert with three or more other persons.

DeFoggi argues that under the proper application of the term "in concert with," the government provided insufficient evidence for the jury to convict him of engaging in a CEE based on the predicate counts of accessing child pornography.  We decide this issue on narrow grounds.  The indictment alleged that DeFoggi committed four separate predicate violations as defined in § 2252A(g).  Specifically, the government charged four instances of accessing with intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b) (Counts 4–7).  Section 2252A(a)(5)(b) is violated if a person "knowingly accesses with intent to view, any . . . computer disk, or any other

---

[3]The parties do not dispute that the CEE offense as charged involved more than one victim.

material that contains an image of child pornography that has been . . . shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer."

To convict DeFoggi of a CEE, there must be evidence that he committed at least three of the predicate offenses "in concert with" three or more people. Precedential guidance on the "in concert" language in the CEE offense is limited, but in construing 21 U.S.C. § 848(c), which proscribes a criminal drug enterprise, the Supreme Court has stated that "the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or enterprise" sufficient to constitute a conspiracy. Rutledge v. United States, 517 U.S. 292, 300 (1996). We agree with our sister circuits that the Supreme Court's construction of 21 U.S.C. § 848 informs our reading of § 2252A(g). See United States v. Grovo, Nos. 15-30016, 15-30027, 2016 WL 3443691, at *4 (9th Cir. Jun. 23, 2016); United States v. Daniels, 653 F.3d 399, 413 (6th Cir. 2011); United States v. Wayerski, 624 F.3d 1342, 1351 (11th Cir. 2010). It follows from Rutledge's holding that to act "in concert with" requires the same mens rea as a conspiracy charge. Grovo, 2016 WL 3443691, at *4.

In this case, however, we do not see sufficient evidence that DeFoggi committed the predicate offenses of accessing child pornography "in concert with" anyone else – even assuming for purposes of analysis that "in concert with" means no more than an agreement.[4] For each predicate count, the jury was presented with

_____

[4]While DeFoggi argues, as others before him have done, that the statute requires each individual predicate felony to be committed "in concert with" three other persons, we agree with the Ninth and Sixth Circuits that "the more natural reading of § 2252A(g) is that 'the required total of three other persons may be tallied by considering the predicate counts together.'" Grovo, 2016 WL 3443691, at *5 (quoting Daniels, 653 F.3d at 412).

-13-

screenshots of other members' profiles and the images DeFoggi clicked on that were uploaded to the profiles. But we do not understand how the single act of accessing an image with the intent to view it by clicking on it alone from behind one's computer screen can be done "in concert with" anyone else – at least not on the facts presented here. The government argues that DeFoggi entered a "conspiracy" with three or more other people "to commit the offense of accessing with intent to view child pornography."[5] But even assuming without deciding that the CEE offense requires a conspiracy and nothing more, the evidence was insufficient here. Conspiracy requires an agreement to accomplish the specific illegal objective at issue – here, accessing child pornography. The evidence showed that many people voluntarily joined PedoBook in part to access child pornography. But that does not necessarily mean that DeFoggi, when he accessed child pornography on the specific occasions charged in the predicate counts 4–7, agreed to do so with anyone else. And the trial record is bereft of evidence of any such agreement in this case. Even if we further assume that participants in the enterprise need not act simultaneously, see id. at *5, the government failed to offer evidence that DeFoggi acted in concert with anyone concerning the underlying elements of the offense of accessing with intent to view child pornography as charged in Counts 4–7.

_____

[5]We note that this argument appears to overlook the statutory requirement that a person charged with engaging in a CEE must *commit* three offenses, not simply agree to commit them, in order to be convicted. See 18 U.S.C. § 2252A(g).

Like several of the defendants in the cases analyzed by our sister circuits,[6] DeFoggi participated in interactive features of the child pornography website at issue, such as private messaging between members. Yet that conduct is separate and apart from the offenses that constituted the underlying predicates necessary to sustain the child exploitation enterprise offense, i.e., accessing with intent to view child pornography. Whether or not DeFoggi's other PedoBook-related activities were proscribed by other statutes, the government failed to prove that DeFoggi was guilty of violation 18 U.S.C. § 2252A(g) as the offense was charged in this case.

### 2. Counts 4–7

DeFoggi also argues that no reasonable jury could have concluded beyond a reasonable doubt that he "intentionally" accessed PedoBook to view child pornography as charged in Counts 4–7. This is because, he asserts, (1) the government failed to provide any direct evidence that he was the person who was using the computer to view PedoBook, (2) even if he did access PedoBook, he did so because he used the Tor network for work, not so that he could view child pornography, and (3) his chats did not show an intent to access or solicit child pornography because they were "mere fantasy."[7]

---

[6]See, e.g., Grovo, 2016 WL 3443691, at *6 ("Both defendants posted hundreds of times, . . . gained admission to the upper level of the . . . board after being admitted and elevated through a vouching process, . . . [and] repeatedly accessed and distributed child pornography."); Wayerski, 624 F.3d at 1348 (defendants participated in a sophisticated group, communicated with each other, limited its membership, and "made specific requests for and purchased the production of new illicit material").

[7]DeFoggi also makes these assertions in support of his argument that there was insufficient evidence to convict him on Count 1. Given our ruling above, we consider them only as to Counts 4–7.

As previously discussed, evidence tied DeFoggi to the online username and display name "fuckchrist" and "Ptasseater" on the PedoBook website. The FBI's investigation into those usernames through open source database searches, administrative subpoenas to DeFoggi's internet service providers, and cooperation with foreign law enforcement revealed that the usernames belonged to DeFoggi. There was Tor traffic associated with those identities occurring at his residence in the early morning hours on the PedoBook website. In private chats on PedoBook, DeFoggi disclosed identifying information such as his geographic location and the times when he frequented PedoBook and other child pornography websites. His in-person meeting with another person under investigation established that his name was Tim and let the FBI know DeFoggi had a domestic partner who was unaware of his interests (information that eventually helped the FBI determine who at DeFoggi's address was accessing child pornography). DeFoggi had extensive knowledge of the Tor network, and PedoBook could not be discovered and accessed without it. The jury was reasonable in concluding that DeFoggi was accessing PedoBook.

Moreover, it was reasonable for the jury to conclude that DeFoggi accessed PedoBook with the intent to view child pornography. The fantasy chat messages on PedoBook revealed "copious amounts of discussion concerning the exchange of child pornography with other users." Manning, 738 F.3d at 945. DeFoggi disclosed identifying details about himself "in the context of discussing the exchange of child pornography with others." Id. DeFoggi argues that those chats were "mere fantasy" and not indicative of solicitation or of a step toward obtaining child pornography. He argues that the chats are therefore "speech protected under the First Amendment." However, the solicitation of child pornography can be proscribed without First Amendment concerns where a "statute penalizes speech that accompanies or seeks to induce a transfer of child pornography – via reproduction or physical delivery – from one person to another." United States v. Williams, 553 U.S. 285, 294 (2008).

"[O]ffers to provide or requests to obtain child pornography are categorically excluded from the First Amendment." Id. at 299. DeFoggi asked other members of PedoBook where he could find certain videos and whether they had or could produce images for him. He then provided his email address to those other members. Such solicitations were not just "speech protected under the First Amendment," as DeFoggi argues. Rather, the evidence presented at trial was sufficient to prove that he intended to access child pornography.

Additional evidence also showed that DeFoggi was accessing PedoBook and illustrated his specific intent to access child pornography in doing so. For instance, when the FBI executed the search warrant at DeFoggi's residence, he had to be forcibly separated from his laptop, which was actively downloading a child pornography video. The laptop contained evidence of the username "fuckchrist" and a Yahoo Messenger profile for "PTasseater69." In addition, the Tor browser bundle was found on the laptop with evidence of browsing activities on multiple child pornography sites, including PedoBook. Images of child pornography were also located on the computer. DeFoggi's actions in attempting to maintain anonymity by creating usernames, registering as a member of the website, creating a profile page, selecting or accepting other members as "friends," joining various subcategory groups, requesting or soliciting child pornography from other members, as well as the contents of his laptop when he was apprehended are more than enough to support a jury finding of intent.

The jury was free to accept or reject DeFoggi's theory that someone else had used his computer or that he had accessed PedoBook for professional reasons. See United States v. Henley, 766 F.3d 893, 905 (8th Cir. 2014) ("In reviewing a challenge to the sufficiency of the evidence . . . 'a jury's credibility determinations are virtually unreviewable.'" (quoting United States v. Perez, 663 F.3d 387, 391 (8th Cir. 2011))).

-17-

He does no more than restate that argument here. Upon the evidence presented, we find that a reasonable jury could conclude beyond a reasonable doubt that DeFoggi accessed PedoBook and other websites with the intent to view child pornography.

The offense of accessing child pornography also requires an "interstate commerce" nexus.[8] DeFoggi alleges that there is no evidence that the computer disk or other material containing visual depictions of child pornography were transported in interstate commerce because "[t]he interstate nexus must be established prior to the user's access." "The Internet is an instrumentality and channel of interstate commerce." United States v. Havlik, 710 F.3d 818, 824 (8th Cir. 2013) (citing United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007)). DeFoggi's use of the internet to access and download images and videos from PedoBook is enough in this case to satisfy the interstate commerce nexus. Even if it were not, the content of PedoBook was uploaded by the website's global users. The server that hosted the data that comprised the PedoBook website was located in Nebraska. A user accessing the website and its content from Maryland would be accessing data that was stored on and had traveled from a server located in Nebraska. A reasonable trier of fact therefore could find that DeFoggi accessed the website with the intent to view child

---

[8] 18 U.S.C. § 2252(a)(5)(B) criminalizes a person who:

> knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . .

-18-

pornography that had been transported using a means or facility of interstate commerce.[9] See id.

**E.    Jury Instructions**[10]

DeFoggi challenges Instruction 37, which begins with the sentence "You have heard evidence that the defendant committed offenses involving child pornography that were not charged in the Indictment." DeFoggi argues that the sentence should have read: "You have heard evidence that the defendant committed similar acts in the past that were not charged in the Indictment." But DeFoggi himself requested an instruction that included the language he now objects to, and his objection is therefore waived. See United States v. Davis, 2016 WL 3457264, at *3 (8th Cir. Jun. 24, 2016) ("When a party expressly agrees to an instruction, the doctrine of invited error applies, and any objection to the instruction is waived." (citations omitted)). Even if this issue were properly before us, DeFoggi fails to offer any argument as to why the objected-to language is erroneous. See United States v. Byrd, 542 F.2d 1026, 1029 (8th Cir. 1976) (citing United States v. Phillips, 522 F.2d 388, 391 (8th Cir. 1975)); see also Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007) (holding points not meaningfully argued in opening brief are waived); United States

---

[9]DeFoggi alleged that because the evidence was insufficient the district court abused its discretion in denying his motion for a new trial. As discussed in our analysis of DeFoggi's challenge to the sufficiency of the evidence, the evidence adequately supported the jury's verdict on all but DeFoggi's conviction for a child exploitation enterprise.

[10]DeFoggi asserts various errors in the jury instructions as they relate to Count 1, including the definition of the phrase "in concert with." He also reasserts other objections to the instructions as they relate to Count 1. Given our ruling above, we need not address these arguments.

v. Cruz-Zuniga, 571 F.3d 721, 725 (8th Cir. 2009) ("The district court has wide discretion in formulating instructions." (quoting United States v. Long, 977 F.2d 1264, 1272 (8th Cir. 1992))). DeFoggi also renews his objection regarding a venue instruction, but offers no argument as to why or how the district court erred, so this objection is likewise waived. See Ahlberg, 481 F.3d at 634.

### III. Conclusion

Because DeFoggi was improperly convicted of engaging in a child exploitation enterprise, we vacate his conviction and remand for resentencing.[11]  We affirm the judgments in all other respects.

————————————————

---

[11]DeFoggi contends that the 20-year mandatory minimum sentence for a child exploitation enterprise is a violation of the Eighth Amendment's ban on cruel and unusual punishment.  As we vacate his conviction on that count, we need not address DeFoggi's Eighth Amendment challenge.